Council, you may proceed. Thank you. Good morning, Your Honor. I'm Patrick Seville. I'm a CJA panel attorney from Guam. I'm here on behalf of John Jr. Cruz. Your Honor, the first issue I'd like to address is actually our second issue in our brief, and that is the admission over objection of testimony by the police officer regarding the video cameras and whether the trial court erred in allowing that testimony to come in. Trial counsel had the right instincts about that testimony and promptly objected. Unfortunately, counsel objected under 403 instead of 702, and so we acknowledge that the court will review this issue for plain error. We submit, Your Honor, that the error was clear and it was plain and that it did affect the outcome of the trial. What do you rely on to indicate that the existence of the video cameras had an effect on the outcome of the trial? Because, Your Honor, it was a close case. This case really hinged on the voice identification of Nancy Castro, the cooperating witness. The exchange between Nancy Castro and whoever she spoke to was not a loquacious exchange, Your Honor, and the determination of did she recognize that voice on the phone or not was critical, and it was a close call. But we're talking about the video monitors, aren't we? Well, I know, Your Honor, but you're asking why it affected the outcome, and the reason I think it affected the outcome is in a close call, when you now have a police officer getting up and saying, oh, this house where my client lived was a drug house because they had a security camera and a monitor in their bedroom, that, we submit, tilts the playing field towards the government. That is, in a close case, that is sufficient and sufficiently prejudicial to tilt the case in favor of the government, and it's prejudicial, and it has a determination on the outcome also because, and this is what the court addressed in U.S. v. Figueroa-Lopez, although not reaching the conclusion, they addressed it and then said, well, it's harmless in that case. But here, it's a Rule 16 violation. If the government wants to put on expert testimony, and let me point out that this is different than... For the record, I thought that counsel for your client, and I gather it was someone other than you at the trial level, right, failed to object on the ground that Officer Quintanilla was not an expert witness. Instead, he objected that the testimony was irrelevant. I believe, I hope that's what I said, yes. So your point is that the whole outcome of this case depended on the admission of testimony about the video cameras that was irrelevant. I don't think... Well, that's phrasing it differently than I would, Your Honor. I don't think you need to say the whole outcome of the case. Is there a substantial likelihood that the outcome would have been different? Yes. Because... And we've included the transcript. The U.S. Attorney, Greg Cleverly, really hammered that in closing argument about, oh, this is the den of a drug dealer. In a closed case, that kind of testimony is critical. And, Your Honor, the other point that I want to make on that is the Rule 16 violation is significant. Because this is the kind of testimony, if the government gives fair notice, we're going to have an expert testify on these issues. That gives the defense a chance to get a counter-expert. There is no opportunity for that, no reason for the defendants to get a counter-expert on this issue. You did not know that Quintanilla, or whatever his name was, was going to testify? Yes. He was on the list, wasn't he? Pardon me? He was on the list of witnesses, was he not? Sure. But he was not designated as an expert, and this particular aspect of his testimony was not designated. And unlike Figueroa Lopez, where the government argued that the police officers really were qualified as lay witnesses, in this case, on page 10 of their answering brief, the government candidly admits this was expert testimony. This was Rule 702 testimony. Okay, so we think that it was a significant error. It was a plain error. This was 702 testimony that was- But in this case, counsel, you candidly referred to Figueroa Lopez. As you know, in that case, the testimony was admitted because the officer had, in quote, specialized knowledge. In this case, it seems to me this officer had far more. I mean, he apparently was employed by the ATF for five years, was a DEA task force agent for the prior five years. He was involved in, in quotes, probably well over 100 drug investigations, and he'd seen monitored camera setups many times before. So if they had tried to qualify him as an expert witness, do you think there would have been any doubt that he would have been so qualified? No, I don't. He would have qualified as an expert. But that's the whole point of Rule 6. That doesn't mean he's infallible. That doesn't mean that he's right. But it denies the defendant the opportunity on a critical piece of evidence to have counter testimony. Counsel, I'm going to ask the government a question, but I thought I'd give you a crack at it. What's the evidence to support the conviction in Count 2? No, no, no. I will ask the government when it's their turn, but I thought I'd give you a crack at it first. I'm used to the trial court judges bouncing around. I'm sorry, Your Honor. No, you're on it. Count 2 was the June 25th transaction, and there really wasn't, as to Mr. Cruz, there wasn't any evidence. It was the Nancy Castro testified. She spoke to Pauline. And that was really the sum and substance of all the testimony against. Okay, but can the conspiracy evidence come into play in that context or not? In other words, your position is that you have to have separate, specific evidence with respect to that transaction rather than showing that he was part and parcel of a conspiracy? Yes, Your Honor. And I think that's consistent with Pinkerton. As to the June 25th transaction, there is no evidence of a conspiracy in that there was something going on. Wait a minute. Doesn't Pinkerton say, if, I'm assuming he's a member of the conspiracy, right? And that sale was in furtherance of the conspiracy, even though he had nothing to do with it, he's still chargeable with it. Under Pinkerton, right? Why do you say your theory is consistent with Pinkerton's? It seems to me it's not. Well, Your Honor, because as of June 25th, there was no evidence that he was a member of the conspiracy. That only came, the only evidence linking... Alright, so what are you saying? The evidence as to the conspiracy was insufficient, at least up to that date and time? It was nonexistent, Your Honor. It was simply nonexistent as to Mr. Castro, up until that time. Mr. Castro is not... This is Cruz we're talking about. Cruz. So the reason you say Cruz can't be chargeable with the June 25th transaction, one, no evidence that he participated or personally connected with that transaction, right? And two, there's no evidence that he was a member of the conspiracy. Is that what you're saying? Yes, Your Honor. Alright. I have a question about Nancy. Apparently, much of the gravamen of your concern is that she's a liar, her testimony is inconsistent. She, of course, her testimony that she bought from Cruz before the latest version of all these things is critical in the whole thing. Why should we, as a court of appeal, be reviewing factual findings when the jury made such a determination? Isn't the jury the better trier of fact in this case? Your Honor, I think first, Mr. Cruz was not charged with those earlier transactions, which came to light... You ask about Nancy. She's debriefed for a long period of time and a few days before trial says, oh, by the way, I bought things from Mr. Cruz a couple of years ago. You're not saying that's not inadmissible, are you? No, Your Honor. What you're saying... It wasn't... But you are saying it does improve this conspiracy. I mean, that he's a member of this conspiracy. These transactions years ago. Actually, it doesn't because... I'm sure you'll correct me if I'm wrong. As I recall the transcript, Your Honor, she did not testify as to those earlier transactions that there was a connection between Mr. Cruz and Pauline. No, we just divide between her and Cruz, but it fairly sets up the concept that Cruz is a drug dealer, right? Isn't that an important element that you're raising? You're not raising that argument. I'm not raising the argument that he was clearly a drug dealer, Your Honor. You were concerned before about the negative impact of the video testimony because it makes it sound this is a drug dealer situation. I'm simply going back in the testimony to Nancy indicating that she bought drugs from Cruz. Okay. Doesn't that establish far more than the video issue that this guy is a drug dealer? At least that's the allegation. Well, Your Honor, I would say that the jury had two distinct acts of drug dealing that were involved in the charges, the June 25th and July 18th. The testimony about the video, I think, and the testimony that occurred at that residence related to those two transactions. The transaction a couple of years earlier was not tied into the house. I understand that. Okay. So, I'm not sure what the jury could infer from that. Thank you, Counsel. Your time has expired. I'm sorry. We'll hear from the government. Good morning, Your Honor. Rosetta St. Nicholas for the Appellate Office from Guam. Your Honor, as far as the first issue regarding the expert who testified as to the video monitor at the defendant's home, he testified that this provided the defendant with a warning time, that this is used for surveillance and is used to protect the defendant. Yeah, but the question is, was a 702 qualification required, and if it was, was it done? It was not done. It should have been done, and Ms. Johnson concedes that that was error. Therefore, what, reverse? No, Your Honor. However, she believes that the error was harmless. It doesn't affect substantive. When you say she, you're talking about Karen Johnson? Correct. You're speaking as if she's not connected with you in any way. I'm sorry, Your Honor. Don't you both represent the government? Yes, we do, Your Honor. Your Honor, it is error. However, it is harmless. It did not affect the substantial rights, and it certainly didn't affect the fairness, integrity, or the judicial, or the public, the judicial proceedings in this case. What about the qualifications that Judge Smith indicated in his colloquy with Mr. Seville? Could they be taken into account? They could, and Your Honor, this is... But you're waiving that. You're saying that you should have had a 702, and there wasn't, and therefore there was error. It was harmless error, but they can still be taken into account, because the record also showed that the agent had experience as a DEA agent and an ATF agent, that he had seen hundreds of surveillance systems set up like this defendant's in the home, that he had participated in over 100 search warrants, and he had... I'm just confused by your argument. Are you now saying that this evidence met the 702 burden or not? It did, Your Honor. Well, you just said at the very beginning that there was error, and there was no 702 qualification. There was 702 qualification. It was a technical error not to label him as an expert. Special Agent John Quintanilla, given all of his experience, training, knowledge, would have qualified as an expert regardless. Well, what about Mr. Seville's point that, well, one of the primary purposes of going through all this rigmarole and qualifying the expert and so forth is to, you know, and giving notices to give the other side the opportunity to hire their own expert. They didn't have that opportunity, did they? I'm sure that they were aware that the agent was going to testify, because... But they weren't aware that he was going to give expert testimony. However, Your Honor, they waived that because they made an objection based on relevance, as opposed to objecting based on lay person's testimony. Well, they didn't waive it. You know, you don't waive it in criminal cases. So it's subject to plain error, right? Yes. Let me ask you about, going back to me, the other serious issue in here is the sufficiency of the evidence on the conspiracy count. What do you recount as the evidence that, you know, sufficient to establish that Cruz was part of this conspiracy, especially part of the conspiracy on June 25th? The history of the defendant, the knowledge that Pauline, I'm sorry, that Nancy Castro had of John Cruz, if the testimony was that she had a supplier named Doris Palacios, the supplier was going off island... She meaning who? Nancy Castro. Nancy, you're right. Nancy had a supplier named Doris Palacios. Doris Palacios said, I'll be going off island, contact John or Pauline. Well, this was when? This was, she stated that it was about three years prior to this incident. This was the history. She knew that her supplier was leaving. Her supplier linked her up with another contact, John and Pauline. She also knew John because she had two specific instances where she purchased methamphetamine from him in 2004 and 2005. Then the evidence was that... But none of that, you know, is evidence that connects him to this conspiracy, is it? Well, Your Honor, that is where the tapes that were submitted as part of the excerpts, the government's excerpts, come into play. The phone conversations deal that every single time that Nancy Castro went to purchase methamphetamine from Pauline, she would call up. If Pauline didn't have any drugs, she would say, wait, I got a check with him, a man that Pauline knew lived with her. Remember, she did give the telephone number of John Cruz to ATF, and ATF verified that that was John Cruz's phone number. She also, at one point, specifically referring to the June 25th conversation, he said, call back. I'm going to check and see if he's got anything. But counsel, you're reciting only the parts of the record that are good for the government. Well, what about the problems with the issue? I mean, I look at Nancy Castro's testimony. It's just shot through with inconsistency. So, for example, she originally told the officers that she did not buy from Palacios, who we now know was Cruz. At the time, she became an informant. Then she told the DA in preparation for trial that she'd bought from him on four occasions. At trial, she testified that she bought ice directly from him in the living room on two occasions. I mean, she's just all over the place, and she's the guts of this case. The government has the obligation to prove beyond a reasonable doubt that these events occurred. Why don't these kinds of inconsistencies just destroy the conspiracy theory that the government has? And couple that with the 702 issue. Because apparently the jury found this source of information, Nancy Castro, believable. And we should defer to their judgment, they being the jury. The jury sat there and listened to the testimony in spite of the inconsistencies as she related her history. Do you feel that we're bound by the jury's determination if the record shows gross inconsistency and the government has the burden to prove this beyond a reasonable doubt? I believe that the government did prove it, that Pauline, I'm sorry, that Nancy Castro is certainly not a perfect witness. However, for purposes of proving the conspiracy, she was consistent enough that a jury was able to find that the conspiracy existed. Also, Your Honor, at trial, the transcripts that came out were transcripts of events that were recorded by ATF. This was not just solely relying on Nancy Castro's recollection. It is also tapes of what transpired, which was monitored by ATF officer, Special Agent John Quintanilla. Counsel, what about the question I telegraphed to you when I was talking with Mr. Seville? That count two bothers me. I'm not sure where the evidence is that supports it. What's your argument in favor of sustaining conviction on count two? On June 25th, the defendant, I'm sorry, the defendant, I'm sorry, Nancy Castro purchased 7.7 grams of methamphetamine for $3,600. It was 97% pure. It goes back to the conversations that occurred where Pauline was approached and said, get me the dope. Nancy would call back and say, hold on, I'm waiting for John. He's on his way home. Is that enough to implicate John? I believe so, Your Honor. Given the facts of the defendant's background, where he was, that she had prior dealings with him, that this was exactly the phone number that he had, that that phone number actually checked out, that she referred to him as she was preparing to give this money. But also, the defendant, Cruz, was also responsible for almost setting the price and acting as a businessman. He would make, they would receive an offer and then she'd say, wait a minute, Nancy would say, wait a minute, John's price is 8. What was the charge on count two? Distribution of methamphetamine on or about June 25th, 2005. And the testimony of a co-conspirator without any direct testimonial involvement by the defendant is enough? There was also corroborating evidence because of the tapes that were there. The home was surveilled as this was occurring and a car drove up. During the time that Pauline said, wait, we've got to check with John, a car drove up and a mail got out. It's reasonable to infer that that was the defendant, John Cruz. Pretty thin. Anything further, Counsel? Good thing there's not much ice in Guam. And I don't mean that as a drag. Counsel, your time has expired. Thank you very much. We will now submit this case for decision and hear argument next in United States v. Kimball.
judges: O'scannlain, Tashima, Smith